United States Courts Southern
District of Texas
FILED

*September 19, 2022*

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **MAURICIO CHAVEZ,** ) <br> **GIORGIO BENVENUTO, and** ) <br> **CRYPTOFX, LLC,** ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> **CBT GROUP, LLC,** ) <br> ) <br> Relief Defendant. ) <br> ) | Civil Action No. **4:22CV3359** <br> **UNSEALED 9/29/2922** <br> FILED UNDER SEAL <br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges:

## NATURE OF THE ACTION

1. The Commission brings this action to halt an ongoing, multi-million dollar securities fraud directed at Latino investors being perpetrated by Mauricio Chavez, Giorgio "Gio" Benvenuto, and CryptoFX, LLC ("CryptoFX") (collectively, "Defendants").

2. Targeting the Latino community, Chavez has used the attraction and novelty of crypto assets to solicit money from unsophisticated investors with no previous knowledge of the crypto asset markets. Since 2020, Chavez has raised more than $12 million from as many as 5,000

investors by offering to trade their funds on crypto asset and foreign exchange markets.[1] Chavez vastly overstates actual and potential returns, and then instructs investors to sign a short contract labeled a Venture Agreement, which outlines the amounts of their investments, their anticipated returns, and the dates of return payments.

3. Instead of actually using investor funds to purchase and trade crypto or foreign exchange assets, Chavez has misappropriated the majority of investor money to fund his unrelated real estate company and his extravagant lifestyle, maintaining the illusion of CryptoFX's prosperity through significant Ponzi payments. Chavez and Benvenuto have also diverted several million dollars in investor funds to the Relief Defendant, CBT Group, LLC ("CBT Group"), a real estate development company they co-own.

4. In addition, Chavez functioned as an unregistered investment adviser and deceived at least 70 clients about his own trading expertise. Starting in May 2020, Chavez formed the "elite" Founders Circle classes for select CryptoFX investors to allegedly teach them how to use Chavez's personalized trading strategies to achieve greater investment returns. But Chavez's strategies did not achieve greater investment returns. After teaching them how to create and open digital wallets, Chavez made Ponzi payments to the Founders Circle investors to provide the illusion that they had achieved significant trading returns when they had not.

5. Through their actions, Defendants violated, and unless enjoined will continue to violate, the antifraud provisions of the federal securities laws, namely Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]. Chavez and CryptoFX, additionally, violated Sections 5(a) and 5(c) of the Securities Act

---

[1] The financial allegations in this Complaint are based on a review of Defendants' accounts between January 2020 and August 2022 (the "Relevant Period").

[15 U.S.C. §§ 77e(a), 77e(c)], and Chavez violated Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)].

6. To protect the public from further fraudulent activity, the SEC brings this action against Defendants and seeks: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains from Defendants and the Relief Defendant, plus prejudgment interest; and (iii) civil penalties. Because of the ongoing nature of the fraudulent offerings and the risk of asset dissipation, the Commission also seeks against Defendants emergency relief, including a temporary restraining order, an asset freeze, appointment of a receiver, an accounting, and orders expediting discovery, permitting alternative means of service, and prohibiting alteration or destruction of documents.

## DEFENDANTS

7. **Mauricio Chavez** is 41 years old and resides in Houston, Texas. He is the founder and CEO of CryptoFX, LLC. Chavez is also a founder and principal of Relief Defendant CBT Group, LLC. Chavez, who appears to have worked as a landscaper before starting CryptoFX, has no known background, education, or training in trading, investment management, or real estate. Chavez is not registered with the Commission in any capacity.

8. **Giorgio Benvenuto** is 55 years old and resides in Houston, Texas. He is a founder, principal, and manager of CBT Group, LLC. Benvenuto is not registered with the Commission in any capacity.

9. **CryptoFX, LLC** is a Texas limited liability company with its principal place of business in Houston, Texas. According to its website, CryptoFX is a "cryptocurrency learning academy" that holds in-person and online classes about crypto assets and blockchain technologies. CryptoFX is not registered with the Commission.

3

## RELIEF DEFENDANT

10. **CBT Group, LLC** is a Texas limited liability company with its principal place of business in Houston, Texas. Chavez is a co-founder and the majority owner, and Benvenuto is a co-founder and minority owner. CBT Group is a real estate development company focused on acquiring and developing residential properties in and around Houston, Texas.

## JURISDICTION AND VENUE

11. The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

12. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

13. The defendants offered and sold investments pursuant to contracts labeled Venture Agreements. In an effort to avoid acknowledging that CryptoFX is an investment company, Defendants characterized these investments as loans to CryptoFX. Defendants' offerings are securities because they fall under the description of notes and investments contracts, respectively, under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)]. Additionally, Chavez acted as an investment adviser under Section 202(a)(11) of the Advisers Act because he earned compensation as CryptoFX's portfolio manager.

14. In connection with the conduct described in this Complaint, Defendants, directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce by, among other means, soliciting investments via the internet and accepting investor deposits via wire transfer.

15. Venue is proper in this District because, at all relevant times, Defendants were located in and conducted business in this District, and the individual Defendants resided in this District. Further, acts, transactions, and courses of business constituting violations of the federal securities laws alleged in this Complaint occurred within this District, including but not limited to Defendants' solicitations of investors and the acceptance and disbursement of investor funds.

## FACTUAL ALLEGATIONS

### I. Chavez Formed CryptoFX in February 2020

16. In or around February 2020, Chavez formed CryptoFX. Although Chavez had no formal education or training in securities trading or investments, including in crypto assets, Chavez created CryptoFX with the stated goal of educating the Latino community about the crypto asset space. At all relevant times, Chavez owned and controlled CryptoFX, directed the activities of its employees, and personally handled its banking and trading transactions.

17. Initially, CryptoFX offered daily, in-person classes before shifting to virtual classes after the COVID-19 pandemic started. The class packages ranged in cost from $499.99 to $1,499.99. Chavez used the classes to solicit potential investors, telling them that he wanted to "empower the common man" and create wealth within the Latino community.

18. Chavez and CryptoFX solicited students with the purported intention of teaching them about blockchain technology and digital assets generally, how to open digital wallets, and how to begin trading crypto assets for themselves. Existing students were then solicited for

5

investments pursuant to the Venture Agreements. CryptoFX also accepted funds from investors seeking to have CryptoFX make crypto trades for them. Although CryptoFX used student solicitations to obtain more investment funds, Chavez admitted under oath that the majority of CryptoFX's business came from investors giving CryptoFX money to invest for them pursuant to the Venture Agreements. Notably, some of the most recent online and in-person solicitations do not even mention the purported classes.

19. As noted above, CryptoFX recorded these investments in documents titled "Venture Agreement CryptoFX, LLC." The Venture Agreements generally set forth the amounts of investments and a schedule for repayments to investors. Chavez personally drafted, reviewed, and approved the Venture Agreements.

20. The precise form of the Venture Agreements varied over the 5,000 investors who signed up. Even though the vast majority of in-person and on-line solicitations took place in Spanish, the Venture Agreements are in English.

21. To raise more money from investors, CryptoFX established a referral program in which existing investors ("Sponsors") would receive 7% of any referral investor's investment amount as a "direct sponsor" payment. In addition, Sponsors would receive 3% of any future investments that a referral investor solicited. Recently, CryptoFX has begun holding seminars for its referral network participants to recruit new investors. At these seminars, CryptoFX representatives have solicited investors by claiming that Chavez has generated positive returns through crypto asset trading. In addition, CryptoFX brings in current investors at these seminars to rave about their investment returns. When one seminar attendee questioned the source of the returns, he was ejected from the seminar by CryptoFX representatives, who were hostile to the attendee and followed him to his car.

22. CryptoFX has held, and continue to hold, investment seminars throughout the U.S., including in Houston, New Orleans, Chicago, Waco, Fort Worth, North Carolina, and California, in which they solicit investments in CryptoFX. Representatives of CryptoFX do not allow potential investors to take photographs or videos of the CryptoFX presentations.

**II.  Defendants Solicit Investments Using False Statements and Material Omissions**

23. CryptoFX touts false claims of exorbitant investor returns to solicit investors. In a recent example, Chavez spoke to a group of potential investors at a Crowne Plaza hotel in Houston in August 2022, and claimed that CryptoFX had "literally made over five millionaires in the last year."

24. Some Venture Agreements, issued by CryptoFX in or around May 2021, stated that "WE ARE TAKING YOUR MONEY AND INVESTING IT IN OUR BEHALF. IF WE RECEIVED ENOUGH RETURN ON CRYPTO CURRENCY, WE WILL REPAY THE STUDENT A PORTION OF THE TOTAL TUITION." As described below, the vast majority of investor funds, in fact, went to purposes unrelated to crypto asset investments, including real estate acquisition and development, personal spending, and to make Ponzi payments.

25. Other Venture Agreements, issued by CryptoFX in or around May 2020, state that an investor "WILL BE RECEIVING REWARD FOR MY CONTRIBUTION IN THE FORM OF BITCOIN" with options of payments every one, three, six, or twelve months. These Venture Agreements included the following guarantee: "IN THE EVENT THAT CRYPTOFX, LLC LOSES THE MONEY OR CANNOT CONTINUE TO FULFILL PAYMENTS, CRYPTOFX, LLC AGREES TO REPAY TOTAL PRINCIPAL AMOUNT CONTRIBUTED IN A PERIOD NO LATER THEN 24 – 36 MONTHS WHICH BOTH PARTIES HAVE AGREED TO BE

7

SETTLED OUTSIDE OF ANY COURTS." In fact, as Chavez and CryptoFX knew, actual crypto asset investment proceeds were insufficient to make any such promise.

26. In fact, CryptoFX used a PowerPoint presentation to solicit investors in classes that included a table of potential earnings that showed investors earning back half of their investments in profits in three months and 90% in six months. Chavez claims that these potential numbers are based on the previous performance of CryptoFX, but he knew that actual crypto asset trading proceeds were insufficient to make any such forecast.

27. CryptoFX's Venture Agreements contemplate only contributions for crypto trading education and investments in crypto assets. The Venture Agreements do not disclose that investor funds will be used in connection with unrelated purposes such as real estate investment or to make Ponzi payments. The Venture Agreements also do not disclose any compensation to the company or Chavez personally.

28. In presentations to potential investors, Chavez claimed that he was a crypto asset expert with years of cryptocurrency trading experience. CryptoFX's website claimed that classes would be taught by "industry practitioners with over 20 years of experience combined." These claims were false. Neither Chavez nor CryptoFX's co-founders had any professional experience, education, or training in the crypto asset space. Likewise, the Defendants never disclosed that the vast majority of the funds contributed by investors were actually being used for unrelated purposes, personal spending, and Ponzi payments as described below. Similarly, the Defendants never disclosed that less than 10% of investor funds was ever used in crypto asset or foreign exchange trading.

### III. Defendants Invested Very Little Investor Funds in Crypto Assets and Foreign Exchange Trading.

29. Although Defendants represented that CryptoFX investor funds would be used to conduct crypto asset and foreign exchange trading, very little of the investor funds were actually used for that purpose. Of the more than $12 million raised from investors by CryptoFX between February 2020 and August 2022, less than $1 million of those funds were used to conduct crypto asset or foreign exchange trading.

30. Defendants misrepresented that investor funds would be used to trade crypto assets and concealed the fact that they were using investor funds to make Ponzi payments that were disguised as trading returns.

### IV. Defendants Have Misappropriated the Vast Majority of Investor Funds

#### a. Real Estate Projects and Investor Funds Diverted to CBT Group

31. CryptoFX used a significant portion of investor funds to make undisclosed investments in real estate property and development, instead of trading on crypto or foreign exchange markets. During the Relevant Period, the Defendants and Relief Defendant paid a combined $6,371,444 to title companies, homebuilders, individuals, construction companies, engineering firms, architects, and other entities for the purchase and/or development of multiple properties – purposes wholly unrelated to the crypto asset and foreign exchange trading ventures solicited, offered, and sold to investors.

32. Further, CBT Group had no source of income during the Relevant Period other than CryptoFX investor funds. During that time, Chavez and Benvenuto diverted nearly $8 million in CryptoFX investor funds to CBT Group, with Benvenuto often requesting Chavez to transfer

investor funds to CBT Group and personally depositing investor checks into the CBT Group account. Benvenuto also recruited a friend of his to invest in CryptoFX and then asked Chavez to have her make out her investment payment to CBT Group. Benvenuto had invested in CryptoFX himself and knew that CryptoFX Venture Agreement did not disclose that funds would be diverted to CBT Group.

33. Of the nearly $8 million in CryptoFX investor funds received by CBT Group, Benvenuto and Chavez used at least $4.8 million for the acquisition and the development of various real estate properties.

34. For its part, CryptoFX directly spent $1,563,953 of investor funds on real estate, purchasing various personal properties and homes, including $540,000 to purchase a single family residence in the name of Chavez's wife.

35. In addition to the real estate diversion described above, and the Ponzi payments described below, CBT Group also spent CryptoFX investor funds on legal fees ($826,188), loan payments for a bridge loan ($122,000), office rent ($90,000), furniture ($55,487), security services ($27,848), and retail purchases ($23,997).

36. Defendants did not disclose these unauthorized uses of CryptoFX investor funds to investors. Throughout the Relevant Period, Chavez and Benvenuto knew that they were diverting funds obtained from investors instead of making trades on crypto asset and foreign exchange markets as promised.

### b. Ponzi Payments

37. In soliciting investors to invest with CryptoFX, Chavez and CryptoFX claim to have made crypto-trading millionaires out of several of their investors. In reality, Defendants have

10

distributed a total of $2,722,602 in putative "returns" to investors during the Relevant Period – and the vast majority of this distribution was sourced from funds of new investors.

38. Of the $2,722,602 that has been distributed, $1,454,602 was paid from CryptoFX accounts and $1,268,000 was paid from CBT Group accounts. The CryptoFX and CBT Group accounts used to make investor distributions were comprised almost entirely of investor funds, not profits earned from trading. In all, during the Relevant Period, 98% of the payments to investors ($2,671,602) were Ponzi payments sourced with investor or commingled investor funds. Chavez and Benvenuto knew, or were severely reckless in not knowing, that they were paying CryptoFX investors "returns" with new investors' funds.

39. By using new investor funds to pay "returns" to older investors, CryptoFX deceived investors into thinking that CryptoFX was successfully trading their money. CryptoFX then used those unwitting investors to praise the company during live seminars with potential investors.

### c. Chavez's Personal Spending

40. Chavez also used at least $1,446,953 of investor funds to pay for additional expenses unrelated to crypto asset and foreign exchange transactions, including $460,594 on cars, $267,623 in credit card payments, $196,513 on retail purchases (including $100,000 at luxury retailers such as Saks Fifth Avenue), $181,996 paid to the Post Oak Hotel (apparently for Chavez's residence in the luxury hotel), $110,358 on travel, $100,935 at restaurants, over $19,000 on jewelry, and over $15,000 at adult-entertainment establishments. In addition, upon information and belief, the SEC staff believes that Defendants used $30,000 of CryptoFX investor funds to purchase a hair salon in Houston.

41. Chavez did not disclose to investors these unauthorized uses of CryptoFX investor funds. Throughout the Relevant Period, Chavez knew that he and CryptoFX were diverting funds

11

obtained from investors who thought they were making investments in crypto asset and foreign exchange trades.

V. **Chavez Acted as an Investment Adviser and Defrauded CryptoFX and individual clients.**

42. Chavez was engaged in the business of advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. Chavez acted as CryptoFX's portfolio adviser, with sole authority for CryptoFX's pooled assets and its investments. Exercising this authority, Chavez traded investor funds in various crypto asset securities.

43. In exchange for trading CryptoFX funds, Chavez received compensation by misappropriating CryptoFX's funds.

44. Chavez knowingly misappropriated CryptoFX's assets by using them to pay personal expenses, to fund an unrelated business, and to make Ponzi payments to investors.

45. Chavez also established separate, individual advisory relationships based on his "mentorship" of the Founders Circle clients. In particular, Chavez provided personalized advice to these clients, advising them in connection with crypto asset trading, on several different forms of crypto assets.

46. Chavez knowingly misrepresented to individual Founders Circle members that his personalized advice and specialized trading strategies would generate the possibility of higher returns. In reality, Chavez knew that he was making the same trades for Founders Circle members as he did for other CryptoFX investors, which would result in the same returns. To disguise this fact from Founding Circle members, he paid Founders Circle members larger Ponzi payments. Chavez also knowingly misrepresented his background as an experienced trader with expertise in crypto assets.

12

47. Engaging in these deceptions, Chavez violated his fiduciary duties to CryptoFX and Founders Circle members, who had engaged him to advise them in connection with securities transactions.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

*Against all Defendants*

48. Plaintiff re-alleges and incorporates paragraphs 1 through 47 of this Complaint by reference as if set forth verbatim in this Claim.

49. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

   a. employed a device, scheme, or artifice to defraud; and/or

   b. made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c. engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

50. By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

*Against Defendants Chavez and CryptoFX, LLC*

51. Plaintiff re-alleges and incorporates paragraphs 1 through 47 of this Complaint by reference as if set forth verbatim in this Claim.

52. By engaging in the acts and conduct alleged herein, Defendants Chavez and CryptoFX, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

 a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

 b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

 c. knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

53. By reason of the foregoing, Defendants Chavez and CryptoFX have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

**Violations of Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)]**

*Against Defendant Benvenuto*

54. Plaintiff re-alleges and incorporates paragraphs 1 through 47 of this Complaint by reference as if set forth verbatim in this Claim.

55. By engaging in the acts and conduct alleged herein, Defendant Benvenuto, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has:

    a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

    b. knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

56. By reason of the foregoing, Defendant Benvenuto has violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## FOURTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of Section 17(a) of the Securities Act
and Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder**

*Against Defendant Benvenuto*

57. Plaintiff re-alleges and incorporates paragraphs 1 through 47 of this Complaint by reference as if set forth verbatim in this Claim.

58. By engaging in the conduct described above, Defendant Benvenuto knowingly or recklessly provided substantial assistance to Defendants CryptoFX and Chavez's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

15

59. By reason of the foregoing, pursuant to Section 15(b) of the Securities Act and Section 20(e) of the Exchange Act, Defendant Benvenuto aided and abetted, and unless restrained and enjoined will continue to aid and abet, Defendants CryptoFX and Chavez's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### FIFTH CLAIM FOR RELIEF

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

*Against Defendants Chavez and CryptoFX*

60. Plaintiff re-alleges and incorporates paragraphs 1 through 47 of this Complaint by reference as if set forth verbatim in this Claim.

61. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly:

   a. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

   b. for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

   c. made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium

16

of any prospectus or otherwise, securities as to which no registration statement had been filed.

62. By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## SIXTH CLAIM FOR RELIEF

### Violations of Sections 206(1) and (2) of the Advisers Act
### [15 U.S.C. §§ 80b-6(1), (2)]

*Against Defendant Chavez*

63. Plaintiff re-alleges and incorporates paragraphs 1 through 47 of this Complaint by reference as if set forth verbatim in this Claim.

64. By engaging in the acts and conduct alleged above, Defendant Chavez, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, while acting as an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], has: (a) employed a device, scheme, or artifice to defraud a client or prospective client; and/or (b) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon a client or prospective client.

65. With regard to the violations of Section 206(1) of the Advisers Act, Defendant Chavez engaged in the conduct intentionally or with severe recklessness. With regard to the violations of Section 206(2), Defendant Chavez engaged in the conduct at least negligently.

66. By reason of the foregoing, Defendant Chavez has violated, and unless enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)].

17

## SEVENTH CLAIM FOR RELIEF

Equitable claim against Relief Defendant

*Against Relief Defendant CBT Group, LLC*

67. The Commission repeats and re-alleges Paragraphs 1 through 47 of the Complaint as if fully set forth herein.

68. CBT Group, LLC, directly or indirectly, received funds or assets, or benefitted from the use of funds or assets, which are proceeds of the unlawful activity alleged above. It received funds, assets, and/or property, directly or indirectly, from Defendants that were obtained as a result of the securities law violations described herein.

69. CBT Group, LLC has no legitimate claims to such funds, assets, and/or property received, or from which they otherwise benefitted, directly or indirectly.

70. The Commission is entitled to an order, pursuant to common law equitable principles – such as disgorgement, unjust enrichment, and constructive trust – and pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], requiring CBT Group, LLC to disgorge all of the funds, assets, or property they received, either directly or indirectly, from Defendants that were derived from the illegal activities described above.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1. Permanently enjoining Defendant Chavez from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)];

2. Permanently enjoining Defendant CryptoFX, LLC from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

3. Permanently enjoining Defendant Benvenuto from violating Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], or in the alternative, from aiding and abetting Chavez and CryptoFX's violations of Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

4. Permanently enjoining Defendants Chavez and Benvenuto from participating in the issuance, offer, or sale of any security, provided, however, that such injunctions shall not prevent Chavez or Benvenuto from purchasing or selling securities for their own personal accounts;

5. Permanently enjoining Defendants Chavez and Benvenuto from serving as an officer or director of any issuer required to file reports with the SEC under Section 12(b), 12(g), or 15(d) of the Exchange Act [15 U.S.C. §§ 78l(b), 78l(g), and 78o(d)] pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

6. Ordering the Defendants and Relief Defendant to disgorge ill-gotten gains as a result of the violations alleged herein, plus prejudgment interest on those amounts;

7. Imposing civil penalties against Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)] for violations of the federal securities laws as alleged herein;

8. Imposing such other and further relief as the Court may deem just and proper.

19

Dated:  September 19, 2022                    Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

*/s/ Matthew J. Gulde*

Matthew J. Gulde
Illinois Bar No. 6272325
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  (817) 978-1410
Facsimile:  (817) 978-4927
guldem@sec.gov

*Attorney for Plaintiff*